THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

**Andrew** and **Jennie Skwara**
    *Plaintiffs*

**v.**

**Wondershop Inc.**
**Shenzhen Center Power Tech. Co., Ltd**
d/b/a Powerextra
    *Defendants*

C.A. _____

Jury Demanded

## Complaint

Plaintiffs Andrew and Jennie Skwara bring this lawsuit timely against Defendants Wondershop Inc. and Shenzhen Center Power Tech. Co., Ltd., and allege the following:

**Parties**

1. Andrew and Jennie Skwara are Tennessee citizens.

2. Defendant Wondershop Inc. is a Delaware corporation with its headquarters and principal place of business located at 13853 Ramona Avenue in Chino, California. This company may be served at this address through its registered agent, Gui Chun Huang.

3. Defendant Shenzhen Center Power Tech. Co., Ltd. d/b/a Powerextra is a company formed and existing under the laws of China with its principal place of business in Center Power Industrial Park, Tongfu Industrial District, Dapeng Town, Longgang, Shenzhen, Guangdong, China, 518120. This defendant may be served through The Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, as ratified by Italy on or about November 25, 1981.

**Jurisdiction and Venue**

4. This Court has subject matter jurisdiction over this claim because the parties are citizens of different states (or countries), and the amount in controversy exceeds $75,000, exclusive of interest and costs.[1]

5. This Court may exercise personal jurisdiction over the defendants because they transact business or committed acts that give rise to this lawsuit in Tennessee.

6. Venue is proper in this district because a substantial part of the events or omissions

---

[1] *See* 28 U.S.C. § 1332(a).

giving rise to the claim occurred in, and because the property that is the subject of the action is in, Sumner County, Tennessee.[2]

**Factual Allegations**

7. On or about October 22, 2022, Andrew and Jennie Skwara owned the home at 106 Buchanan Circle in Hendersonville, Tennessee.

8. That day, a Powerextra rechargeable lithium-ion battery ("Battery") manufactured, distributed, marketed, or sold by the defendants ignited, causing a fire ("Fire").

9. The defendants marketed and sold the Battery through Amazon.com. They represented that the Battery was a replacement for, and compatible with, the v7 Dyson cordless vacuum, including the Dyson v7 Motorhead Cordless Vacuum.

10. Based on the representations about the Battery on amazon.com, the Skwaras bought the Battery in December 2021 for their Dyson v7 Motorhead Cordless Vacuum.



11. The Battery was not a "removable" one in that it screwed into the base of the vacuum's handle and was intended to become a permanent part of the vacuum during the Battery's useful life.

---

[2] *See* 28 U.S.C. § 1391(b)(2).

12. The Dyson v7 Motorhead Cordless Vacuum came equipped with a docking station that charged and stored the vacuum in a ready-to-use, fully-charged condition.

13. So, the vacuum was designed to (1) have its battery serve as a permanent part of the vacuum, and (2) be kept charging, and fully charged, while not in use so that it was ready to use with a full charge when removed from its charging station.

14. The Battery was incompatible with this setup and design. It was also inferior to the original battery, and to Dyson's replacement battery in that it was constructed shabbily of lesser components. The New York Times outlined many of these deficiencies in a February 19, 2020 article, "Knockoff Dyson Vacuum Batteries Are Cheap, but They Aren't Worth the Risk."[3] The article mentioned PowerExtra specifically.



15. In fact, the Battery was thus neither a replacement for the original vacuum battery or compatible with the vacuum—contrary to the representations the defendants made

---

[3] https://www.nytimes.com/wirecutter/blog/dyson-replacement-battery-packs/

about the Battery, which had induced the Skwaras into purchasing it. The defendants knew or should have known this when they sold the Battery.

16. Post-sale, the defendants received notice from customers that the Battery was *especially* susceptible to overheating and failure. So much so that they issued a recall for the Battery—the notice of which, seen here, reached the Skwaras days after the Fire.



17. The Fire and resulting damage reasonably cost more than $430,000 to repair. Thus, the Skwaras bring these claims, pleaded alternatively and cumulatively:

**Count 1: Products Liability**

18. The Battery is a tangible object or good produced.

19. The Battery is a "product," as defined by section 29-28-102(5) of the Tennessee Code.

20. The defendants are the Battery "manufacturers," as defined by section 29-28-102(4) of the Tennessee Code.

21. The defendants are also the Battery "sellers," as defined by section 29-28-102(7) of the Tennessee Code.

22. The Battery failed to perform in a manner reasonably expected given its nature and intended function when it failed and caused the October 2022 fire at the Skwara home.

23. The Battery had not been misused after its sale.

24. The Battery was within its expected useful life at the time of the Fire.

25. The Fire was such that it would not have occurred without a defect or unreasonably dangerous condition within the Battery.

26. The Battery was unreasonably dangerous and defective in that it:
    a. was dangerous to an extent beyond what would be contemplated by the ordinary consumer who buys it, with the ordinary knowledge common to the community as to its characteristics; and
    b. would not have been put on the market by a reasonably prudent manufacturer or seller, assuming that the manufacturer or seller knew of its dangerous condition.

27. That unreasonably dangerous condition and defect proximately caused the Fire and damage to the Skwara home and personal property, violating the Tennessee Products Liability Act of 1978, Tenn. Code Ann. §§ 29-28-101 *et seq*.

28. The defendants are thus liable to the Skwaras for the damages caused by the Fire.

**Count 2: Violations of the Tennessee Consumer Protection Act**

29. For the purchase of the Battery, the Skwaras were "consumers," as defined by Tenn. Code § 47-18-103(3).

30. For the sale of the Battery, the defendants were engaged in "trade" and "commerce," as defined by Tenn. Code § 47-18-103(20).

31. The defendants' representations that the Battery was a "replacement" for and "compatible" with the Skwaras' original v7 Dyson vacuum battery were misleading, if not false.

32. These representations constituted unfair methods of competition and unfair or deceptive acts or practices prohibited by the Tennessee Consumer Protection Act, Tenn. Code § 47-18-101 *et seq*.

33. The TCPA outlaws "[u]nfair or deceptive acts or practices affecting the conduct of any

trade or commerce."[4] The Act sets forth a long list of specific actions covered by the definition of "unfair or deceptive act or practice."[5]

34. Those prescribed acts relevant here are found in Tennesee Code Section 47-18-104(b) subsections: (5) "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have . . ." (7) "Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another . . ." (19) "Representing that a guarantee or warranty confers or involves rights or remedies which it does not have or involve . . . . [and] (21) "Using statements or illustrations in any advertisement which create a false impression of the grade, quality, quantity, make, value, age, size, color, usability or origin of the goods or services offered . . ."

35. The TCPA creates a cause of action for damages available to "[a]ny person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice described in § 47-18-104(b)."[6]

36. Thus, the Skwaras bring this TCPA claim for the damages caused by the Fire and those other damages authorized by the Act, particularly those for willful or knowing violations, as outlined in Tenn. Code § 47-18-109.

**Count 3: Post-Sale Negligent Failure to Warn and Recall**

37. Post-sale, the defendants learned of new information that suggested the Battery was defective and unreasonably dangerous at the time it left their control. This new information included that the Battery had cells that would heat up "more than previous batches."

38. Learning this hazard or embarking on a recall, or both, obligated the defendants to warn purchasers of this hazard *promptly* and, in fact, to recall the Battery.

39. The defendants owed that duty to those foreseeably harmed by failing to meet it,

---

[4] Tenn. Code § 47-18-104(a).

[5] Tenn. Code § 47-18-104(b).

[6] Tenn. Code § 47-18-109(a)(1).

including the Skwaras.

40. The defendants breached this duty by failing to warn the Skwaras timely, recall the Battery promptly, and otherwise exercise reasonable care in ways that discovery may disclose.

41. As a proximate result of one or more of these breaches, the Fire and resulting damage to the Skwaras occurred.

42. The defendants are thus liable to the Skwaras for damages proximately caused by the Fire.

**Conditions Precedent**

43. All conditions precedent to bringing this lawsuit have occurred, been performed, or been waived.

**Relief Requested**

44. The Skwaras request that they recover the more than $430,000 in damages caused by the defendants' actionable conduct, treble damages, attorney fees, pre- and post-judgment interest, court costs, and any other sums or relief this Court considers appropriate.[7]

**Plaintiffs Demand a Trial by Jury**

| | |
|---|---|
| October 20, 2023 | Respectfully submitted, |
| Knoxville, Tennessee | QUIST, FITZPATRICK & JARRARD PLLC |
| | By: */s/ Michael A. Durr* |
| | Michael A. Durr (TBA 26746) |
| | 800 South Gay Street, Suite 2121 |
| | Knoxville, Tennessee 37929 |
| | Direct: (865) 312-0440 |
| | Email: mdurr@qfjlaw.com |
| | *Attorney for Plaintiffs* |

---

[7] *See Scholz v. S.B. Int'l, Inc.*, 40 S.W.3d 78, 83 (Tenn. Ct. App. 2000) ("[F]airness will, in almost all cases, require that a successful plaintiff be fully compensated by the defendant for all losses caused by the defendant, including the loss of use of money the plaintiff should have received.")(reversing trial court's denial of prejudgment interest).