IN THE UNITED STATES DISTRICT COURT
FOR

THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| Linda Allen, individually and as next of kin to decedent Eric J. Allen, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 3-23-_____ |
| Joshua D. Lo, Reese Harper, James Hambrick, and the City of Mt. Juliet, Tennessee, individually, jointly and severally, | ) ) ) ) | Judge _____ |
| Defendants. | ) ) ) | Magistrate Judge _____ |

**COMPLAINT**

**PARTIES**

1.      Plaintiff, Linda Allen, is a resident of the City of Nashville, County of Davidson, and the decedent's next of kin.  Decedent, Eric J. Allen, was a resident of the City Nashville and County of Davidson at the time he was tased and shot three times with a handgun by the Defendant, Joshua Lo, on November 2, 2023.

2.      Plaintiff, Linda Allen, is the parent of the decedent, Eric J. Allen (hereinafter "EJA"), and the only heir of EJA.   Plaintiff is bringing this action as an individual on her own behalf under federal law, Tennessee law, with municipal regulations as set forth below.  Plaintiff is also bringing this action on behalf of the deceased, EJA, in her capacity as next of kin and the successor in interest of the Estate of EJA (decedent).

3.      Decedent, EJA, died intestate in the City of Mt. Juliet, County of Wilson, State of Tennessee.   No special administrator or personal representative of the Estate of EJA has been

appointed by any Court.

4.     The deceased, EJA's only heir is Linda Allen.   Decedent, EJA, ("Deceased" "Decedent" or "EJA") at the time of his death on November 2, 2022, was a thirty-nine (39) year-old resident of the City of Nashville, Tennessee.  At the time of his death, EJA was single and had no children.

5.     At all times relevant hereto, Defendant Joshua Lo, was an employee of Mt. Juliet, Tennessee Police Department and was a resident of the County of Wilson, State of Tennessee, and was duly appointed and acting as a police officer at all times alleged.  Defendant Lo ("Defendant Lo" or "Lo") is being sued individually and in his capacity as an employee of the City of Mt. Juliet, Tennessee.

6.     At all times relevant hereto, Defendant Reese Harper, ("Defendant Harper" or "Harper") was, and still is, a resident of the County of Wilson, State of Tennessee, and was duly appointed and acting as a police officer at all times alleged.  Defendant Lo ("Defendant Lo" or "Lo") is being sued individually and in his capacity as an employee of the City of Mt. Juliet, Tennessee.

7.     At all times relevant hereto, Defendant, James Hambrick, ("Defendant Hambrick" or "Hambrick") was, and still is, a resident of the County of Wilson, State of Tennessee, and was a resident of the County of Wilson, State of Tennessee and was duly appointed and acting as  Chief of Police.  Defendant Hambrick is being sued individually and in his capacity as an employee of the City of Mt. Juliet, Tennessee.

8.     Defendant Hambrick, maintains general supervision of Defendants Lo and Harper, and was also responsible for Lo and Harper's hiring, training, and retention, along with Defendant, City of Mt. Juliet, Tennessee. Acting under color of law, Defendants Lo, Hambrick and Harper

deprived EJA of well-established civil rights that are protected by both the United States Constitution and the Constitution of the State of Tennessee. Plaintiffs seek compensatory and exemplary damages, declaratory and injunctive relief and attorneys fees and costs, in addition to any other relief this honorable court deems just and proper under the circumstances.

10. At all times relevant hereto, Defendant, City of Mt. Juliet, Tennessee was and still is the employer of Defendants, Joshua Lo, James Hambrick and Reese Harper.

11. Defendant Harper unjustifiably detained EJA as he sat in the passenger seat of the car that was driven by Ms. Melody Mitchell. The illegal detention continued when Defendant, Lo, told EJA "don't you go anywhere."

12. EJA was an unarmed 39 year-old African American male who sustained fatal gunshot wounds to his back, lungs and upper body on November 2, 2022. Defendant Joshua Lo, without legal justification, fired the fatal shots that caused the death of EJA, while using unnecessary, unreasonable, and excessive force, and in violation of EJA's constitutionally guaranteed right to life.

## VENUE AND JURISDICTION

13. This Court has jurisdiction over federal questions pursuant to 28 U.S.C. §§ 1331, 1343; 42 U.S.C. §§1983, 1988. This court also has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. §§1367.

14. Venue is proper in this Court under U.S.C. §§1391 (a) because at the time of the incident all Defendants resided in the State of Tennessee and at least one of the Defendants resides in the Middle District of Tennessee.

15. Venue is proper in this Court under 28 U.S.C. §1391 (b) because all incidents, events and occurrences giving rise to this action occurred in Mt. Juliet, Tennessee.

## STATEMENT OF FACTS

16.     EJA was a passenger in a car driven by Melody Mitchell.  At approximately 11 p.m. on November 2, 2022.  Ms. Mitchell was driving a Honda Accord Coupe that had one headlight out.  EJA was a front seat passenger in the car with Ms. Mitchell at that time. At approximately 11:45 p.m., on South Mount Juliet Rd near the intersection of Central Pike, Defendant Lo activated blue lights and initiated a traffic stop of Ms. Mitchell.

17.     Ms. Mitchell responded to the show of authority and  pulled her car over in an orderly manner.  Defendant Lo told Ms. Mitchell that he pulled her over because she had a headlight out.  Defendant Lo requested Ms. Mitchell and EJA's identification, to which they complied by giving Officer Lo their identification.

18.     Ms. Mitchell was asked for her insurance and registration. She reached over to the passenger side to access the glove compartment in order to retrieve the requested documents. Ms. Mitchell was unable to retrieve the documents requested by the police officer. The officer then got in his police vehicle and ran background checks on Ms. Mitchell and EJA.

19.     Defendant Lo got into his patrol car, and it is unclear whether he called the dispatcher, as there was not any sound from Defendant Lo's bodycam video recording.

20.     Shortly thereafter, Defendant Lo came back to the driver side of the car and asked Ms. Mitchell to exit the vehicle. Ms. Mitchell complied and got out of the car, however she had to first secure her dog [Buttercup] inside the vehicle to prevent the dog from running into the street. Within a few minutes a backup squad car arrived.  That car was driven by Officer Reese Harper, who was talking to Ms. Mitchell at the rear of Ms. Mitchell's car.  Defendant Lo, approached the

4

passenger side of the car and began to engage in conversation with EJA. Defendant Lo, asked EJA to get out of the car. Instead of getting out of the car EJA crawled over the console and got behind the steering wheel.

21.     Defendant Lo advised EJA not to drive off. EJA, turned to Defendant Lo, with his hands up and said "I ain't got nothing, I ain't got nothing." Defendant Lo got into the car and continued to yell at EJA not to drive off. In a panic, EJA attempted to drive away with Defendant Lo, in the car.

22.     Defendant Lo immediately took out his taser and deployed the weapon against EJA on the right side of his body.

23.     Defendant Lo then used his police issued weapon to fire upon the back of EJA multiple times, and without justification or provocation. The injuries sustained by EJA at the hand of Defendant Lo caused the pain, suffering, and death of EJA.

## CLAIMS

24.     Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 1 through 23 above as though fully set forth herein, with regard to all causes of action.

25.     Pursuant to the terms of Tennessee Code Annotated (hereinafter T.C.A.) §20-5-101, et seq., Plaintiff has a right to recovery for losses due to the wrongful death of her son EJA.

26.     Pursuant to the terms of T.C.A. § 20-5-106, et seq. Plaintiff, Linda Allen, has the right to recover personal injuries, pain and suffering, mental anguish, medical expenses, funeral expenses, compensatory damages and other damages he could recover in his own right were he alive.

27.     The Defendants had actual notice of the death of EJA, and any conditions precedent have occurred, been performed or have been waived.

28.     No estate is necessary and none is pending. The lawful heir is party to this lawsuit.

5

Plaintiff, Linda Allen is the only surviving parent of EJA.

## COUNT I:

### BATTERY/WRONGFUL DEATH UNDER TENNESSEE LAW

29.     Plaintiff incorporates and adopts each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

30.     By the acts alleged herein, Defendants Lo committed battery upon EJA which caused him to suffer death, thereby entitling Plaintiff to damages pursuant to Tennessee Code Annotated §39-13-101, et seq.  As a result Plaintiffs are entitled to general and compensatory damages in an amount to be proven at trial.

31.     In committing the acts alleged above, Defendants Lo, Harper, Hambrick and the City of Mt. Juliet acted maliciously and/or were guilty of a wanton and reckless disregard for the rights EJA, and Plaintiff is entitled to exemplary and punitive damages in an amount to be proven at trial.

32.     By the acts alleged herein, Defendants Lo, Harper, Hambrick and the City of Mt. Juliet caused the Decedent to suffer injuries and wrongful death, thereby entitling Plaintiff to damages pursuant to Tennessee Code Annotated §20-5-101, et seq.  As a result Plaintiff is entitled to general and compensatory damages in an amount to be proven at trial.

## COUNT II:

### CLAIMS UNDER 42 U.S.C. §1983 AND THE 4TH, 8TH, AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION

33.     Plaintiff incorporates and adopts each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

34.     The Defendants, acting under the color of law and acting pursuant to customs,

6

practices and policies of the City of Mt. Juliet and the Mt. Juliet Police Department deprived EJA of rights and privileges secured to him by the Fourth, Eight and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983 and related provisions of federal law, and in violation of the cited provisions.

35. Defendant Lo violated EJA's rights (See TCA §39-11-620) by using deadly force to prevent an unarmed nonviolent passenger in a car from leaving after a traffic stop that did not involve him.

36. On information and belief, Defendants Lo, Harper, Hambrick and the City, acted through official policies, practices, and customs and with deliberate, callous and conscious indifference to the constitutional rights of EJA.

37. The Defendants, as applicable, intentionally and with deliberate indifference deprived EJA of his clearly established federal constitutional rights, including but not limited to:

    a.    EJA's right to life;

    b.    his right to be reasonably safe on the streets of the City;

    c.    his right to due process after being detained; and

    d.    his right to be free from excessive force and cruel and unusual punishment.


38. Defendants James, Hambrick and the City of Mt. Juliet, as applicable, failed and refused to implement and adhere to customs, policies, practices or procedures to protect the constitutional rights of EJA, and failed to train its personnel adequately on the appropriate policies, practices, or procedures regarding temporary detention of a person during a traffic stop. In so doing, Defendants knew that they were acting against the clear dictates of current state and federal law, and

7

also knew that, as a direct consequence of their deliberate decisions, the very situation that occurred – i.e., *injury and death to EJA after being detained during a traffic stop*– was foreseeable.

39.     Defendants Lo, Harper, Hambrick, and the City of Mt. Juliet, through their actions, proximately caused the deprivation of EJA's rights to due process of law and right to be free from cruel or unusual punishment, subjecting him to periods of detention under unduly painful, horrifying and dangerous conditions resulting in the injuries and violent death of EJA. The actions of these Defendants were singularly, or in combination, the legal cause of injuries, damages and death of EJA.

<u>COUNT III:</u>

**VIOLATION OF POLICIES AND PROCEDURES**

40.     Plaintiff incorporates and adopts each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

41.     The Defendant Harper's initial detention of EJA was unlawful and unauthorized in violation of MJPD's policies and procedures.

42.     The Defendant Lo's use of deadly force was excessive and unauthorized.

43.     Defendant Hambrick failed to comply with the City of Mt. Juliet policies and procedures that require thoroughly reviewing and investigating instances of use of force by officers to assure compliance with all laws and departmental policies.

44.     Defendant Lo's use of force was not objectively reasonable.

45.     Defendant Lo unlawfully and without reasonable suspicion or probable cause, entered the vehicle to seize EJA.

46.     Defendant Lo's use of the taser on EJA exhibited a wanton and reckless disregard for safety, and put the public at risk of substantial harm to citizens and property.

47.     Defendant Lo's unlawful and unwarranted discharge of his police weapon multiple times exhibited a wanton and reckless disregard for EJA's and the public's safety.

48.     Defendant Lo's use of deadly force was unlawful, unwarranted, and in direct violation of law, procedure and policy of the City of Mt. Juliet, the Mt. Juliet Police Department, and state and federal law.

49.     Defendant Lo's use of deadly force was unjustified, excessive, and intentional.

50.     Defendant Lo's use of deadly force violated the use of force policy of the Mt. Juliet Police Department.

51.     Defendants Hambrick and City of Mt. Juliet, failed to conduct a proper, thorough, and impartial investigation into the killing of EJA.  Such failures are consistent with the policy, practice, and/or custom of the City of Mt. Juliet to allow misconduct with impunity, and without correction.

52.     Defendant Hambrick created an environment that openly permitted Mt. Juliet police officers to engage in unconstitutional and unlawful acts as cited above, with impunity, and which directly led to the deprivation of constitutional rights of EJA and other citizens.

53.     Defendant Hambrick's supervision of the defendant officers, or lack thereof, contributed to and created the aforesaid environment. In failing to take  affirmative or corrective measures to remedy the constitutional harms, Defendant Hambrick (1) exhibited reckless indifference to the rights of EJA, visitors, and the citizens of the City; (2) acted in bad faith; and/or (3) acted with an intentional indifference to permit the pattern of disparate treatment of, and use of excessive force against African Americans.

9

**COUNT IV:**

**DEFENDANT, CITY OF MT. JULIET, ENGAGES IN A PATTERN, PRACTICE AND CUSTOM OF THE USE OF EXCESSIVE FORCE AGAINST AFRICAN AMERICANS IN VIOLATION OF THE 4TH AMENDMENT OF THE UNITED STATES CONSTITUTION**

54.     Plaintiff incorporates and adopts each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

55.     Defendant Officers, including Defendant Lo, engaged in an ongoing pattern and practice of using unreasonable and excessive force against African Americans, including but not limited to shooting, deploying electronic weapons, and using canines as sordid tools to inflict pain and emotional anguish against African Americans in violation of EJA's 4th Amendment right to be free from excessive force, and his 14th Amendment right to equal protection.

56.     Defendant Hambrick had knowledge of said instances and findings yet failed to intervene or take any corrective action. By doing so, Defendant Hambrick created, promulgated, and effectively ratified and furthered the practice of said misconduct, thereby exhibiting reckless indifference, bad faith, and malice toward the citizens and visitors of the City, including decedent EJA.

57.     The MJPD officers often escalate encounters with African Americans, as did Defendant Lo against EJA.

58.     Such repeated habits have created a culture of unjustified police conduct within the Defendant City of Mt. Juliet, which led directly to the unjustified killing of EJA.

59.     Mt. Juliet police officers frequently use this unconstitutional escalation for punitive and retaliatory purposes and in response to behavior that may be annoying or

distasteful, but does not pose a threat.

60.    Mt.  Juliet police officers, as part of custom and practice, use excessive force against African Americans in instances in which African Americans express their First Amendment right to freedom of speech and expression, which an officer may find personally offensive, but this  does not violate the law. Mt. Juliet police officers frequently violate individuals' First Amendment rights, arresting, and or using unnecessary and excessive force against citizens for protected conduct such as talking back to officers, including the use of foul language, recording public police activities, and lawfully protesting perceived injustices.

61.  Mt. Juliet Police officers engage in a pattern and practice of using excessive force against citizens without legal justification, including arbitrary responses to statements persons make, questions persons ask, and assertions of rights that are protected by the United States Constitution. This conduct results in police officers routinely charging citizens with failure to comply, disorderly conduct, interference with officers or resisting arrest.

## COUNT V:

**DEFENDANT, CITY OF MT. JULIET, HAS A PATTERN AND PRACTICE OF FAILING TO PROPERLY SUPERVISE OFFICERS AND FAILING TO CONDUCT FAIR AND IMPARTIAL INVESTIGATIONS OF ALLEGED OFFICER MISCONDUCT, AND OF FAILING TO PROPERLY TRAIN OFFICERS.**

62.    Plaintiff incorporates and adopts each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

63.    The MJPD routinely failed to properly supervise its officers and failed to conduct fair and impartial investigations into allegations of the use of excessive force by officers, thereby breathing, fostering, and supporting an environment that directly led to the defendant, Lo, violating the constitutional rights of EJA by using excessive force against EJA. Defendant Lo had knowledge

11

of said instances and findings, yet failed to intervene or take any corrective actions. By doing so, Defendant Hambrick created, promulgated, and effectively ratified and furthered the practice of said misconduct, thereby exhibiting reckless indifference, bad faith and malice towards the citizens of Mt. Juliet, including decedent, EJA.

64.     The MJPD's use of force review system is particularly ineffective as officers frequently fail to report the use of force, and supervisors perform perfunctory or no investigation.

65.     Further, the perfunctory investigation that supervisors do perform is rarely meaningful.

66.     Specifically, in the event that a supervisor does investigate use of force reports, they either (1) fail to comprehend or consciously disregard the MJPD use of force policy, and analyzing officer conduct, (2) rarely correct officer misconduct when it is identified and/or (3) fail to use the patterns of abuse that are evident when one reviews the incidents in aggregate.

67.     Defendants, Mt. Juliet and Hambrick allowed MJPD to develop and promulgate customs, policies, and or practices of unconstitutional conduct and violation of the 4th Amendment of the Constitution of the United States, including but not limited to:

a.     Conducting stops and or detentions without reasonable suspicion;

b.     Affecting arrest without probable cause;

c.     The use of unnecessary and unreasonable excessive force against its citizen(s);

d.     Creating an atmosphere reminiscent of a police state, wherein officers felt free to confront citizens at their discretion and without any lawful authority, i.e., for crossing the street, speaking in a tone in which an officer did not approve, etc.: *and*

e.     Frequently escalating routine matters by using unlawful orders, physically and or

geographically restraining individuals' movement, unlawfully demanding

identification, and retaliating against individuals with excessive use of force when

citizens remind officers of their constitutional rights to freedom of speech and bodily

integrity.

## COUNT VI:

**FAILURE TO PROPERLY HIRE, TRAIN, SUPERVISE, RETAIN AND CONDUCT A FAIR AND IMPARTIAL INVESTIGATION (DEFENDANT CITY OF MT. JULIET, AND DEFENDANT HAMBRICK)**

68.     Plaintiff incorporates and adopts each allegation contained in the preceding and

subsequent paragraphs of this Complaint, as if fully set forth herein.

69.     Defendants City of Mt. Juliet and Hambrick had a ministerial duty to provide

reasonable and effective operations of its Police Department.

70.     Defendants also had a ministerial duty to establish proper policies, customs, and

regulations of the Police Department, including but not limited to, how to use their law enforcement

equipment (taser and handgun) in a reasonable and prudent way.

71.     Defendant  Hambrick failed to ensure Defendants Lo and Harper had the proper

training, instruction, supervision and oversight, as to ensure that he did not negligently use his taser

or otherwise use the taser in an unlawful manner.

72.     Defendants Hambrick and City of Mt. Juliet created and/or promulgated a policy and

or practice of allowing officers to negligently and recklessly utilize a MJPD-issued taser as

evidenced by his failure to intervene or reprimand Defendant Lo for his negligent and/or reckless

and unlawful use of his law enforcement taser.  That, along with his failure to intervene, and/or take

13

any corrective action to prevent future harm, provides evidence of his reckless indifference to the rights of citizens. The Defendants acted in bad faith and with malice toward the citizens of Mt. Juliet and the decedent, EJA.

73. Defendants Hambrick and City of Mt. Juliet created and or promulgated a policy and/or practice of allowing officers to negligently and recklessly utilize a MJPD issued handgun as evidenced by his failure to intervene or reprimand Defendant Lo for his negligent and/or reckless and unlawful use of his law enforcement handgun. That, along with his failure to intervene and/or take any corrective action to prevent future harm, provides evidence of his reckless indifference to the rights of citizens. The Defendant(s) acted in bad faith and with malice toward the citizens of Mt. Juliet and the decedent, EJA.

74. Upon information and belief, prior to the death of EJA, Defendants City of Mt. Juliet and Hambrick had a custom or policy of negligently failing to train or supervise officers regarding how to treat and properly serve in areas of Mt. Juliet where contact with African Americans was more likely. Defendant Hambrick had knowledge of said instances and findings, yet he failed to intervene or to take any corrective actions. By doing so, Defendant Hambrick created, promulgated and effectively ratified and furthered the practice of said misconduct, thereby exhibiting reckless indifference, bad faith, and malice towards the citizens of Mt. Juliet, including decedent EJA.

75. Upon information and belief, prior to the death of EJA, Defendants, City of Mt. Juliet and Hambrick, had a custom or policy of negligently failing to train or supervise officers in cultural diversity, and failed to eliminate the potential of unjustified deadly force in areas of the City predominantly populated by African Americans. Defendant Hambrick, had knowledge of said instances and findings, yet he failed to intervene or to take any corrective actions. This failure to act

14

by Defendant Hambrick created, promulgated and effectively ratified and furthered the practice of said misconduct, thereby exhibiting reckless indifference, bad faith and malice toward the citizens of Mt. Juliet., including decedent EJA.

76.     Upon information and belief, the Defendants City of Mt. Juliet and Hambrick have not formally amended its training and/or policies to eradicate similar instances of unjustified use of deadly force, further exhibiting reckless indifference, bad faith, and malice toward the citizens of Mt. Juliet, including decedent EJA.

77.     The wrongful death of EJA was directly and proximately caused by the failures of the Defendants City of Mt. Juliet and Hambrick to fulfill their ministerial duties and contributed to police officers' devaluation of African American life in the City, resulting in a reckless indifference and bad faith and malice toward the citizens of Mt. Juliet, including decedent, EJA.


## COUNT VII:

**UNCONSTITUTIONAL DETENTION AND USE OF EXCESSIVE FORCE
IN VIOLATION OF AMENDMENTS  IV AND XIV OF THE UNITED STATES
CONSTITUTION AND 42 USC §1983**
(Defendant Lo)

78.     Plaintiff incorporates and adopts each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein, inclusive of requested relief.

79.     This count is being brought against Defendants Lo, Harper, City of Mt. Juliet and Hambrick in his individual capacity, pursuant to the United States Constitution Amendments IV and XIV and 42 U.S.C. § 1983 and 1988.

80.     At all times material hereto, Defendants Lo and Harper were employees of Defendant

15

City of Mt. Juliet, and acted within the course and scope of their employment with the same, and acted under color of law.

81.     On November 2, 2022, Defendant Lo and Harper unlawfully detained and or seized EJA.

82.     Defendant Lo used unreasonable and excessive force on EJA, depriving him of bodily integrity, life, liberty and due process of law.

83.     Upon information and belief, a decision was made to approach EJA and to violate his constitutional rights.  This decision was due in part to the fact that EJA was African American.

84.     Defendant Lo escalated the situation by asking EJA to get out of the car, although he was not the subject of the traffic stop.

85.     This unlawful interaction resulted in Defendant Lo violating EJA's right to be free of unreasonable search and seizure under the 4th Amendment.

86.     This unlawful interaction culminated with Defendant Lo firing three shots at close range, striking EJA in the back and chest, while holding his hands in the air and screamed in pain.

87.     Use of force exhibited by defendant Lo against Plaintiff EJA was unreasonable and excessive.

88.     As a direct and proximate result of said Defendant Lo's acts, omissions, and use of excessive force, EJA was deprived of his rights to be free from unreasonable detention, due process of law, equal protection, and the right to life guaranteed to him by the 4th and 14th Amendments to the United States Constitution.

## COUNT VIII:

### DEFENDANT CITY OF MT. JULIET CUSTOMS, POLICIES, PATTERN & PRACTICE OF UNREASONABLE STOPS AND DETENTIONS, USE OF EXCESSIVE FORCE IN VIOLATION OF THE 4TH AND 14TH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND 42 USC §1983 *(Monell Claim)*

89.　　Plaintiff incorporates and adopts each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

90.　　This Count is being brought against Defendant, City of Mt. Juliet, pursuant to the United States Constitution, Amendments IV and XIV and 42, USC §1983 and §1988.

91.　　Prior to November 2, 2022, Defendant, City of Mt. Juliet developed and maintained policies, customs or practices exhibiting deliberate indifference to the constitutional rights of persons in the community, including systematic deprivation of 4th and 14th Amendment rights, which caused the violation of EJA's constitutional rights.

92.　　Defendant City of Mt. Juliet maintains a policy, custom, or practice of (1) conducting unconstitutional stops or detentions; (2) using excessive force; (3) engaging in discriminatory conduct aimed at the African American community resulting in disparate treatment; (4) failing to properly supervise and train officers on lawful detention and use of force, as well as the constitutional requirement of equal treatment; (5) failing to conduct fair and impartial investigation into officers use of excessive force, and (6) failing to punish officers engaged in constitutional violations, thereby ratifying such conduct.

93.　　Defendant City of Mt. Juliet was aware of problems with employees, acting under the color of law, use of excessive force, and as an employer it failed to investigate and/or reprimand such behavior, and failed to discharge said officers for their misconduct, thereby ratifying such conduct.

17

94.     Defendant City was aware of problems with employees, acting under the color of law, use of excessive force, and as an employer it failed to investigate and/or reprimand such behavior and failed to discharge said officers for their misconduct, thereby ratifying such conduct.

95.     Defendant City of Mt. Juliet maintains a policy, custom, or practice of failing to properly train its police officers, including but not limited to, how to use appropriate level of force; how to properly assess levels of threat; and how to properly issue verbal commands.

96.     Defendant City of Mt. Juliet also maintains a policy, custom, or practice of failing to conduct fair and impartial investigations into officer's misconduct, use of excessive force, and police shootings.

97.     Additionally, Defendant City of Mt. Juliet maintains a policy, custom, or practice of disparate treatment of African American citizens, including the disparate use of excessive force.

98.     The above said facts of misconduct were perpetuated, tolerated and not reprimanded by Defendant City of Mt. Juliet. Thus, the Defendant, City of Mt. Juliet, inadequately discouraged constitutional violations perpetrated by its police officers, and as such, EJA's constitutional rights were violated pursuant to the United States Constitution Amendments IV and XIV, and he was ultimately deprived of bodily integrity and his right to life.

99.     As a result of the aforementioned policies, customs, and practices, the Defendant, City of Mt. Juliet fostered an environment where police officers believed that their inappropriate actions would not be subject to proper monitoring by supervisors. They also believed that their inappropriate actions would not be subject to proper investigation or lead to any kind of sanction, but

would instead be tolerated by Defendant, City of Mt. Juliet.

100.    The above facts denote a deliberate indifference on the part of Defendant City of Mt.

Juliet to uphold the constitutional rights of some citizens of the City, as well as of visitors.

## COUNT IX:

### SURVIVAL ACTION - GROSS NEGLIGENCE - 42 U.S.C. § 1983
(Defendant Lo)

101. Plaintiff incorporates and adopts each allegation contained in the preceding and

subsequent paragraphs of this Complaint, as if fully set forth herein.

102. This Count is brought by plaintiff against Defendant Lo as identified herein.

103. Defendant Lo, identified herein, is sued in his individual capacity. At all times

relevant to this Complaint the Defendant Lo was acting under the color of state law as a

police officer employed by Mt. Juliet Police Department.

104. Defendant had a duty to conduct himself in accordance with the law and

Constitutional guarantees, and had a duty to exercise due care when encountering

citizens such as EJA, to avoid causing physical or mental injury, or death.

105. However, Defendant Lo breached his duty when he engaged in intentional,

willful and wanton misconduct and with a reckless disregard for human life or the rights of

EJA. Defendant intentionally inflicted bodily injury to EJA and acted with utter indifference

to EJA's rights and wellbeing.

106. Defendant's gross negligence was the proximate cause of the injuries that EJA

19

sustained. All of EJA's injuries were caused solely by the negligence of Defendant Lo without any contributory negligence by EJA.

107. Defendant's conduct was without legal justification and was improperly motivated by ill will and actual malice. Defendant Lo intended to harm EJA when, with excessive force and without justification, he assaulted and battered him. Defendant further intended to harm EJA when, without legal justification, he intentionally caused him to be seriously, physically and mentally injured, ultimately causing the death of EJA.

## COUNT IX:

### WRONGFUL DEATH - GROSS NEGLIGENCE - 42 USC 1983
(Defendant Lo)

108. Plaintiff incorporates and adopts each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

109. This Count is brought by Plaintiff against Defendant Lo as identified herein.

110. Defendant Lo, identified herein, is sued in his individual capacity. At all times relevant to this Complaint the Defendant Lo was acting under the color of state law as a police officer employed by Mt. Juliet Police Department.

111. Defendant had a duty to conduct himself in accordance with the law and Constitutional guarantees, and had a duty to exercise due care when encountering citizens such as EJA, to avoid causing physical or mental injury, or death.

112. However, Defendant Lo breached his duty when he engaged in intentional, willful and wanton misconduct and with a reckless disregard for human life or the rights of EJA. Defendant intentionally inflicted bodily injury to EJA and acted with utter indifference to EJA's rights and wellbeing.

113. Defendant's gross negligence was the proximate cause of the injuries that EJA sustained. All of EJA's injuries were caused solely by the negligence of Defendant Lo without any contributory negligence by EJA.

114. Defendant's conduct was without legal justification and was improperly motivated by ill will and actual malice. Defendant Lo intended to harm EJA when, with excessive force and without justification, he assaulted and battered him. Defendant further intended to harm EJA when, without legal justification, he intentionally caused him to be seriously, physically and mentally injured, ultimately causing the death of EJA.

## <u>COUNT X:</u>

### WRONGFUL DEATH - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(Against Defendant Lo)

115. Plaintiff incorporates and adopts each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

116. Defendant Lo identified herein is sued in his individual capacity. At all times relevant to this Complaint, Defendant Lo was acting under the color of state law as a police

officer employed by Defendant City of Mt. Juliet, Tennessee.

117. Defendant Lo intentionally subjected EJA to emotional distress when he shot EJA multiple times after having deployed his taser on EJA. The shots were fired as EJA writhed in pain and was submissive to police authority.

118. Defendant Lo's use of lethal force caused EJA to experience pain and suffering, which intensified with every unjustified firing of the police-issued service weapon. Defendant Lo intended to unlawfully invade EJA's physical well-being through harmful or offensive contact.

119. Defendant Lo acted as the City of Mt. Juliet, Tennessee's agent, servant, and/or employee, and his conduct towards EJA was malicious, willful, and wanton and caused emotional distress to EJA, whether or not he actually intended to cause such distress.

120. Defendant Lo's conduct was without legal justification and was improperly motivated by ill will and actual malice.

121. Defendant Lo's intentional actions caused EJA to be put in reasonable apprehension of immediate touching to which he did not consent.

122. EJA was physically and emotionally injured by the continued unlawful actions of Defendant Lo, including the assault upon him.

123. As a result of these acts, EJA sustained physical, emotional, mental, mortal injuries, including, but not limited to, pain and suffering, mental anguish, humiliation,

disgrace, and loss of dignity. EJA's liberty and property were deprived without the judgment of his peers or by the law of the land.

124. Defendant Lo's assault and battery of EJA was meant to inflict extreme and outrageous emotional distress or, at a minimum, Defendant Lo recklessly and willfully disregarded the consequences of his actions and his knowledge that said actions would likely cause such significant emotional distress.

125. As a direct and proximate result of Defendant Lo's conduct, EJA suffered extreme emotional distress prior to succumbing to his injuries as a result of the unlawful acts of Defendant Lo.

## COUNT XI:

### SURVIVAL ACTION - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(Against Defendant Lo)

126. Plaintiff incorporates and adopts each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

127. Defendant Lo identified herein is sued in his individual capacity. At all times relevant to this Complaint, Defendant Lo was acting under the color of state law as a police officer employed by Defendant City of Mt. Juliet, Tennessee.

128. Defendant Lo intentionally subjected EJA to emotional distress when he shot EJA multiple times after having deployed his taser on EJA. The shots were fired as EJA writhed in pain and was submissive to police authority.

23

129. Defendant Lo's use of lethal force caused EJA to experience pain and suffering, which intensified with every unjustified firing of the police-issued service weapon. Defendant Lo intended to unlawfully invade EJA's physical well-being through harmful or offensive contact.

130. Defendant Lo acted as the City of Mt. Juliet, Tennessee's agent, servant, and/or employee, and his conduct towards EJA was malicious, willful, and wanton and caused emotional distress to EJA, whether or not he actually intended to cause such distress.

131. Defendant Lo's conduct was without legal justification and was improperly motivated by ill will and actual malice.

132. Defendant Lo's intentional actions caused EJA to be put in reasonable apprehension of immediate touching to which he did not consent.

133. EJA was physically and emotionally injured by the continued unlawful actions of Defendant Lo, including the assault upon him.

134. As a result of these acts, EJA sustained physical, emotional, mental, mortal injuries, including, but not limited to, pain and suffering, mental anguish, humiliation, disgrace, and loss of dignity. EJA's liberty and property were deprived without the judgment of his peers or by the law of the land.

135. Defendant Lo's assault and battery of EJA was meant to inflict extreme and outrageous emotional distress or, at a minimum, Defendant Lo recklessly and willfully

disregarded the consequences of his actions and his knowledge that said actions would likely cause such significant emotional distress.

136. As a direct and proximate result of Defendant Lo's conduct, EJA suffered extreme emotional distress prior to succumbing to his injuries as a result of the unlawful acts of Defendant Lo.

## COUNT XII:

**SUBSTANTIVE DUE PROCESS, DEPRIVATION AND VIOLATION OF THE 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION AND 42 USC §1983 (DEFENDANT, JOSHUA LO)**

137. Plaintiff incorporates and adopts each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

138. This Count is being brought against Defendant Lo in his individual capacity, pursuant to the United States Constitution Amendments XIV and 42 USC § 1983 and § 1988.

139. At all times material hereto, Defendant Lo was an employee of Defendant City of Mt. Juliet, and acting within the course and scope of his employment and under the color of law.

140. Plaintiff, Linda Allen, had a cognizable interest under the Due Process Clause of the 14th Amendment of the United States Constitution, and being free from state action that caused an unwarranted interference with her right to a familial relationship with decedent EJA.

141. Defendant Lo deprived Plaintiff of her right to a familial relationship with her son in a manner that shocked the conscience of the community.

25

142.     Namely, when EJA had his hands up, Defendant Lo fired three (3) shots at point-blank range that ultimately killed EJA.

143.     As a direct and proximate result of said Defendant Lo's acts, omissions, and deliberate indifference to Plaintiff's constitutional right to her familial relationship with her son, Plaintiff has been deprived of the lifelong love, companionship, comfort, support, society, care, and sustenance of decedent, EJA and will continue to be so deprived for the remainder of her life.

144.     Plaintiff loved EJA, her natural son, and has suffered extreme and severe mental anguish and pain and has been injured both in mind and in body.

145.     Plaintiff has ongoing and continuous permanent damages and injuries and as such is entitled to recovery of damages.

## COUNT XIII:

### DEFENDANT, CITY OF MT. JULIET'S UNCONSTITUTIONAL CUSTOM/POLICY/PATTERN AND PRACTICE OF DENIAL OF SUBSTANTIVE DUE PROCESS AND VIOLATION OF THE 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION AND 42 USC § 1983 AND 1988

146.     Plaintiff incorporates and adopts each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

147.     This count is being brought against Defendant, City of Mt. Juliet pursuant to the United States Constitution Amendment 14 and in violation of 42 USC § 1983 and 1988.

148.     Prior to November 2, 2022, Defendant City of Mt. Juliet developed and maintained policies, customs, or practices exhibiting deliberate indifference to the constitutional rights of persons in the community, which caused the violation of Plaintiffs' constitutional rights under the due process clause of the 14th Amendment of the United States Constitution, which protects individuals from unwarranted state interference of their right to relationship.

149.    Defendant, City of Mt. Juliet maintained a policy, custom, or practice of excessive force against citizens, including inadequately and improperly investigating citizen complaints of police misconduct, and failing to properly hire, train, and supervise MJPD officers.

150.    Defendant, City of Mt. Juliet was aware of problems with employees' use of excessive force, yet effectively ratified such conduct by failing to investigate and reprimand such behavior, by failing to discharge said officers for their conduct.

151.    Defendant, City of Mt. Juliet maintained a policy, custom, or practice of failing to properly train MJPD officers, including but not limited to properly responding to situations regarding how to evaluate threat and appropriate use of force, and how to conduct themselves without employing racial bias.

152.    Defendant, City of Mt. Juliet maintained a policy, custom or practice of treating African Americans differently, including excessive use of force.

153.    The aforementioned acts of misconduct were perpetuated, tolerated, and not reprimanded by the Defendant City of Mt. Juliet, thus, the Defendant, City of Mt. Juliet inadequately discouraged constitutional violations perpetuated by law enforcement officers, but instead ratified such conduct, including the use of excessive force.

154.    The aforementioned facts denote a deliberate indifference on the part of the Defendant City of Mt. Juliet to uphold the constitutional rights of citizens of the city, including Plaintiff, namely when EJA had his hands up, Defendant Lo fired shots at him that ultimately struck EJA at point-blank range in the back three times.

155.    Defendant, City's, aforementioned actions and inactions directly and proximately denied Plaintiff's substantive due process and caused the violation of Plaintiff's right to a familial relationship with her son, EJA.

156.    As such, Plaintiff's constitutional rights were violated pursuant to the United States

Constitution Amendment XIV.

157.     As a result of the above-mentioned policies, customs and or practices, Defendant City's police officers believe that their inappropriate actions would not be subject to proper monitoring by supervisors, and that misconduct would not be subject to investigation or sanction, but would instead be tolerated by Defendant, City. of Mt. Juliet.

158.     As a direct and proximate result of said Defendant City's acts, omissions and deliberate indifference to Plaintiffs constitutional right to her familial relationship with her son, Plaintiff has been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of Decedent, and will continue to be so deprived for the remainder of her natural life.

159.     Plaintiff loved EJA, her natural son, and plaintiff has suffered extreme and severe mental anguish and pain, both in mind and in body.

160.     Plaintiff suffers from and will continue to suffer from ongoing and continuous permanent damages and injuries, and as such is entitled to recovery of damages.

**COUNT XIV:**

**IMPUTED NEGLIGENCE**

161.     Plaintiff incorporates and adopts each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

162. All allegations of negligence in the preceding paragraphs 1-129 against the Defendants Lo and Harper are imputed to Defendant, Hambrick and the City.

**INDEMNIFICATION**

163. Plaintiff incorporates and adopts each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein.

164. Under Tennessee law, public entities are directed to pay any tort judgment for which their employees are liable within the scope of their employment.

165. Officer Defendants are or were employees of Defendant City of Mt. Juliet, Tennessee and they acted within the scope of their employment and in accordance with accepted custom and usage when they committed the misconduct described herein.

166. Accordingly, Defendant City of Mt. Juliet, is required to indemnify any and all of the individual Defendants against whom judgments are entered in this case.

**PRAYER FOR RELIEF**

167. Plaintiff incorporates and adopts each allegation contained in the preceding and subsequent paragraphs of this Complaint, as if fully set forth herein, inclusive of requested relief.

168. For general and compensatory damages against Defendants Lo, Harper, Hambrick, City of Mt. Juliet, jointly and severally in the amount of fifty million dollars ($50,000,000), in the alternative within the jurisdictional limits of this court for the following damages:

    a.     wrongful death of Plaintiff, EJA;

    b.     physical and mental pain and suffering in the past and in the future;

    b.     loss of the relationship with her son;

    c.     reasonable burial and funeral expenses;

d.    pain and suffering and mental anguish suffered by EJA;

e.    reasonable medical expenses;

f.    Pursuant to 42 U.S.C. § 1988 and other applicable laws, Defendants should also award reasonable attorney fees for the preparation and trial of this cause of action and for its appeal, if required;

g.    An order preliminarily and permanently enjoining the Defendant, City's utilization of patrol techniques that demean, disregard, or underserve African American population and visitors; and;

h.    An order appointing a compliance monitor over the Defendant, City's use of force practices and procedures for a period of five years or until such time as the court determines that the Defendant, City of Mt. Juliet has fully and effectively trained all of its police officers on the constitutional requirements of the use of deadly force.

169.    For exemplary and punitive damages against Defendants Lo, Harper Hambrick and City of Mt. Juliet;

170.    Recovery of costs herein expended;

171.    Prejudgment interest and post-judgment interest as permitted by law

**JURY TRIAL DEMAND**

172.    Plaintiffs hereby demand a jury trial in this action.

Respectfully submitted:

/s/ Terry R. Clayton
Terry R. Clayton, BPR# 12392
Attorney for Plaintiffs
1402 5th Avenue North
Nashville, TN  37208
(615)726-2424
tclaytonlaw@comcast.net


By: *Pro Hoc Vice to be filed*
Sheridan Todd Yeary
P.O. Box 682
Columbia, MD 21045
(202) 770-7204 (o); (410) 275-3199 (f)
styeary@yearylegal.com
Attorney for Plaintiffs