IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| PAMELA LOWRANCE, individually and as Wrongful Death Representative of Danny Lowrance. | ) ) ) **Case No.** |
| PLAINTIFF, | ) ) ) |
| v. | ) ) ) ) ) ) ) **COMPLAINT FOR VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983, AND TENNESSEE COMMON LAW** |
| CORECIVIC d/b/a "TROUSDALE TURNER CORRECTIONAL FACILITY;" TROUSDALE COUNTY, TENNESSEE; a Tennessee municipality; WARDEN MARTEN FRINK, in his individual capacity; CORRECTIONAL MEDICAL ASSOCIATES, INC. MISTY ROBERSON, FNP, and SARA OWEN, M.D., | ) ) ) ) ) ) ) ) ) ) **JURY TRIAL DEMANDED PURSUANT TO FED. R. CIV. PRO. 38(a) & (b)** |
| DEFENDANTS. | ) |

## COMPLAINT

TO THE HONORABLE DISTRICT COURT JUDGE:

Plaintiff Pamela Lowrance (hereinafter "Plaintiff"), individually and as Wrongful Death Representatives of Danny Lowrance (hereinafter the "Deceased"), by and through her designated attorneys, for her Complaint allege as follows:

# I.

## NATURE OF THE ACTION

1.     This suit is brought under the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 ("Section 1983") and 1988 and Tennessee common law to remedy Defendants' actions in causing the Deceased to be deprived of his constitutional rights by subjecting him to unlawful treatment during his incarceration at Trousdale Turner Correctional Facility (hereinafter the "TTCF"), during which time Defendants acted with deliberate indifference when they deprived him of basic, necessary, and immediate medical care for the Deceased's serious medical conditions, despite being put on notice of that serious medical conditions by the Deceased. The Deceased suffered physical and emotional harm due to the Defendants' inhumane and deliberate indifferent actions. This failure to provide care for a serious medical condition ultimately resulted in the death of the Deceased. The Deceased's death was the result of institutional failures endemic to CoreCivic facilities in general and TTCF in particular.

2.     In 2016, CoreCivic, Inc. was sued by its own shareholders[1] because, among other things, the company misrepresented staffing numbers, staffed significant numbers of underqualified individuals, and provided poor medical care and safety at their facilities, which led the Federal Bureau of Investigation ("FBI") to investigate, and ultimately, the Federal Bureau

---

[1] *See Nikki Bollinger Grae, individually and on Behalf of All Others Similarly Situation, v. Corrections Corporation of America, Tennessee, LLC, et al.*, Case No. 3:16-cv-02267. (According to Lead Plaintiff Nikki Bollinger Corrections Corporation of America (a/k/a CoreCivic) for years engaged in a scheme to defraud investors and made numerous materially false and misleading statements and omissions regarding CoreCivic's business and operations (D.E. 57, ¶ 3.) Ms. Grae further alleged that CoreCivc understaffing, and the use of underqualified staff directly attributed to multiple CoreCivic employee deaths and those instances of understaffing were far from isolated. (Id. at ¶ 4.) CoreCivic's attempts at cost savings and "efficiencies" from understaffing and hiring underqualified staff, directly contributed to serious safety and security issues at CoreCivic facilities. (Id. at ¶ 117).) On April 8, 2022, a substantial amount of the prior sealed documents in the class action were unsealed. (D.E. 494).

of Prisons to cancel its business relationship with CoreCivic. CoreCivic and its corporate leaders have bolstered the company's profits by reducing staff levels and cutting medical care, despite being contractually obligated to provide minimum staff levels and adequate medical care to all prisoners. CoreCivic, and its leaders, knowingly and intentionally tolerate assault and mayhem for the sake of higher profits. They have concluded that it is more profitable to pay an occasional fine or settlement than to prevent assaults and grievous injuries. Furthermore, the company has repeatedly engaged in fraud and evidence tampering in order to conceal its systemic understaffing, contract violations, and employee misconduct. Notwithstanding these and numerous warnings, CoreCivic deliberately continued to provide inadequate staffing, training, and supervision at TTCF, resulting in the death of the Deceased. CoreCivic is liable to Plaintiff under 42 U.S.C. §§ 1983 and 1988 as well as state law theories of negligence and gross negligence.

## II.

## SUBJECT MATTER JURISDICTION AND VENUE

3.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a) on the grounds that the claims asserted herein arise under Section 1983 and Section 1988. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) in that the federal claims substantially predominate over state law claims and the claims are so related that they form part of the same case or controversy.

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a), (b) and (c) on the grounds that all or a substantial portion of the acts giving rise to the violations alleged herein occurred in this judicial district.

## III.

## THE PARTIES AND PERSONAL JURISDICTION

5.     Plaintiff is a resident of Tennessee and the mother of the Deceased. The Deceased had no surviving spouse or minor children. Plaintiff is the proper party in interest to bring this suit.

6.     Defendant CoreCivic, previously doing business as Corrections Corporation of America, (hereinafter "CoreCivic"), is a private Real Estate Investment Trust which owns and operates TTCF[2], under contract with Defendant Trousdale County, housing prisoners sentenced to confinement in the Department of Corrections.  As such, CoreCivic performs a public function traditionally reserved to the state and is therefore subject to suit under 42 U.S.C. § 1983. CoreCivic is a corporation incorporated in the state of Delaware.  Its principal office's location in the state of Tennessee is 10 Burton Hills Boulevard, Nashville, Tennessee 37215.  It can receive service of process through its registered agent, CT Corporation System, 300 Montvue Road, Knoxville, Tennessee 37919. CoreCivic owed a duty to Plaintiff and breached that duty and is subject to liability in this case. At all times relevant to this Complaint, CoreCivic acted under color of law, performed government functions, was entwined in a symbiotic relationship with the Tennessee Department of Corrections (hereinafter "TDOC"), and was otherwise engaged in state action consistent with the Supreme Court's analysis in *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288 (2000). is a "person" within the meaning of 42 U.S.C. § 1983.

7.     Defendant Trousdale County, Tennessee (hereinafter "Trousdale County") is a Tennessee municipality liable for its policies, customs, practices, and the failure to train its employees, and is a party defendant to this matter. Service upon Trousdale County is perfected

---

[2] As used throughout this Complaint, TTCF refers to the facility and its operator, CoreCivic, and allegations made against TTCF should be construed as allegations against CoreCivic.

by service upon the Trousdale County Mayor, at 328 Broadway, Room 6, Hartsville, TN 37074. Trousdale County is a political subdivision of the State of Tennessee. At all times hereto, Trousdale County and its agents acted under color of state law. Trousdale County maintains a contract with the state of Tennessee to house Department of Corrections inmates. It also maintains a contract with Defendant CoreCivic to run TTCF. Trousdale County has fully subcontracted the policy making of TTCF to Defendant CoreCivic and is therefore liable for the policies, practices, and customs of Defendant CoreCivic at TTCF.

8. Defendant Warden Marten Frink (hereinafter "Warden Frink" or "Defendant Frink") upon information and belief, is a citizen and resident of Trousdale, Tennessee. At all times material to this cause, Defendant Frink was employed by CoreCivic as the Warden of TTCF and acted pursuant to the rules and regulations of the Tennessee Department of Corrections and policies of CoreCivic. Defendant Frink is an employee and agent of CoreCivic with policymaking authority and was ultimately responsible for the oversight and implementation of all policies at TCCF during all relevant times related to this matter. At all times material to this cause, Defendant Frink was acting under color of law. Defendant Frink is being sued in his individual capacity.

9. Defendant Correctional Medical Associates, Inc. (hereinafter "CMA") is a Texas corporation affiliated with CoreCivic. It is responsible for providing health care at TTCF. It can be served with process through its registered agent, Felicia Herring at 11701 Astoria Drive, Austin, Texas 78738. Like CoreCivic, CMA owed a duty to Plaintiff and breached that duty and is subject to liability in this case, and engaged in a similar symbiotic relationship with TDOC.

10. Defendant Misty Roberson, FNP (hereinafter "Nurse Roberson") is believed to be a medical provider and employee or agent of both CMA and CoreCivic. Nurse Roberson is

5

primarily responsible for the medical care of prisoners at TTCF. She is a resident of Gallatin, Tennessee.

11.     Defendant Sara Owen, M.D. (hereinafter "Dr. Owen") is believed to be a medical provider and employee or agent of both CMA and CoreCivic. Dr. Owen is primarily responsible for the medical care of prisoners at TTCF. Dr. Owen is a resident of Smyrna, Tennessee. Additionally, Dr. Owen serves as Nurse Roberson's supervising physician at TTCF.

12.     This Court has both general and specific personal jurisdiction over Defendants because each Defendant has had substantial and continuous contact with Tennessee.  As a result, this Court has personal jurisdiction over Defendants pursuant to TENN. CODE ANN. §§ 20-2-214(1) and (2) and (6) and 20-2-223(1), (3) and/or (4) on the grounds that the Plaintiff's claims are asserted on the grounds that Defendants have committed a tortious act within Tennessee. Furthermore, Defendants' contacts and actions were directed toward Tennessee and thus warrant the exercise of personal jurisdiction over it pursuant to TENN. CODE ANN. § 20-2-225(2).

### IV.

### FACTUAL ALLEGATIONS

13.     The Deceased was a 40-year-old male.

14.     On June 2, 2022, the Deceased was seen per Riverbend Maximum Security Institution's (hereinafter "RMSI") nursing protocol for tooth pain which began two weeks prior. The Deceased had multiple missing and broken teeth, and associated pain. Nurse Keari Brun, LPN, placed a referral to dental in for the Deceased and ordered he be administered Ibuprofen 200 mg tabs, 2 tabs, three times daily.

15.     On or about July 6, 2022, the Deceased was transferred for an unknown reason to RMSI's infirmary. The Deceased remained there until his transfer to TTCF.

6

16. On or about July 24, 2022, and prior to seeing dental, the Deceased was transferred to TTCF.

17. On July 25, 2022, the Deceased received his medical intake from TTCF. His medical intake records indicated that his medical chart was received at that time and would have included his referral for dental examination and treatment for his tooth pain and broken and missing teeth.

18. On July 27, 2022, Defendant Roberson reviewed his intake chart and indicated conflicting information. First she indicated that the Deceased had no issues. Second she indicated that the Deceased would be scheduled as per protocol. However, no medical record exists to indicate that the Deceased was scheduled for or seen by a dentist or dental assistant at TTCF. Specifically, no physician orders for the Deceased exist between July 27, 2022, and April 5, 2023.

19. On April 4, 2023, the Deceased filed the following sick call request which described breathing problems, as well as chest pains which should have resulted in an immediate transfer to the clinic, infirmary, or emergency room for evaluation.

TENNESSEE DEPARTMENT OF CORRECTIONS
SICK CALL REQUEST
(SOLICITUD POR SERVICIOS DE SALUD)

INSTITUTION (INSITUCION)

FOR MEDICAL/MENTAL HEALTH USE ONLY
DATE RECEIVED: 4/4
Time Received: 2300

Print Name (Escriba su Nombre) *DANNY Lawrence*     Date of Request (fecha de solictud) 4-
ID# *446293*     [Fecha de nacimiento]: *5-16-82*     [Unidad de Vivienda] *ACA 107*
                              Date of Birth                   Housing Location

Nature of problem or request (Naturaleza del Problema): *Can not breath Everthing 3 stole. pain in chest can't eat, throws up, body hurts!*

I request to see (Le pido que vea):   Medical [✓]    Dental [ ]    Mental Health [ ]

_____
                                               Signature (Firma)

PLACE THIS SLIP IN THE MEDICAL REQUEST BOX.    DO NOT WRITE BELOW THIS LINE.
•PON ESTA SOLICITUD PARA SER TRATADO POR EL PERSONAL DE SALUD POR LAS CONDICIONES DESCRITAS EN LA CAJA MEDICA
(NO ESCRBA DEBAJO DE ESTA LINEA.]

Triaged by: _____    Referred to: (Circle one)    Nurse    Mid-level    Physician    MH    Dental
Specialty Clinic *4/5 out to hospital* Other _____
CR-3793

RAD 1167

20. On April 5, 2023, around noon a medical code was called for the Deceased for weakness, unresponsiveness, and other tell-tale signs of a stroke after CMA staff failed to timely process the Deceased's sick call slip and diagnosis his serious medical condition. At that time, the Deceased was transferred to the Vanderbilt Medical Center.

21. The Deceased was admitted with a right MCA stroke post mechanical thrombectomy, with serious clinical concerns for sepsis. Plaintiff avers that the sepsis was a result of the untreated dental injuries that the Deceased had suffered from since June 2022.

22. On April 10, 2023, at 5:27 p.m. the Deceased ultimately succumbed to his injuries and died at the hospital.

23. Neither Nurse Roberson nor Dr. Owen ever physically examined the Deceased between his arrival at TTCF and the medical code called on April 5, 2023. Both Nurse Roberson and Dr. Owen deviated from the standard of care in a correctional facility. Specifically, Nurse Roberson knew of or should have known of the Deceased's dental issues and failed to

appropriately refer him to dental for treatment. Additionally, Nurse Roberson failed to appropriately supervise her nursing staff. Finally, Dr. Owen failed to supervise Nurse Roberson and review her treatment of patients.

24.     The State of Tennessee conducts periodic audits of the Department of Corrections pursuant to the Tennessee Governmental Entity Review Law, Tennessee Code Annotated § 4-29-111. The report produced is intended to aid the Joint Government Operations Committee in its review to determine whether the department should be continued, restructured, or terminated. The November 2017 Comptroller Report (hereinafter "The 2017 Report") covered activities for the period July 1, 2014, through August 31, 2017, and included a review of internal controls and compliance with laws, regulations, and provisions of contracts.[3] Some pertinent findings are as follows:

---

[3] https://www.capitol.tn.gov/Archives/Joint/committees/gov-opps/jud/Department%20of%20Correction%20Performance%20Audit.pdf

**Trousdale Turner Correctional Center and Whiteville Correctional Facility, managed by Core Civic, operated with fewer than approved correctional officer staff, did not have all staffing rosters, did not follow staffing pattern guidelines, and one left critical posts unstaffed**
Shortages in correctional officer staff may have prevented two Core Civic facilities (Trousdale Turner Correctional Center and Whiteville Correctional Facility) from meeting staffing obligations and may have limited their ability to effectively manage the inmate populations assigned to them. Correctional officer staffing was often less than operationally planned, and Trousdale Turner had unstaffed critical posts on several days. Both facilities had rosters that did not match state-approved staffing patterns, and both facilities were consistently short-staffed (page 7).

**Core Civic staffing reports for two facilities (Trousdale Turner Correctional Center and Hardeman County Correctional Center) contained numerous errors, so information about hires, terminations, and vacancies may not be reliable**
Our review of staffing reports revealed inconsistencies regarding hires, terminations, and vacancies for two of the four Core Civic facilities. We found the following reporting issues for Trousdale Turner Correctional Center and Hardeman County Correctional Center: missing position numbers for vacancies; vacancies carrying over to subsequent months without additional vacant days; vacancies listed with more than 30 days not listed for the previous month; different job titles with the same position number; the number of hires and terminations not reconciling to the number of vacancies; and reports missing the number of filled positions, inmate population, and officer-to-inmate ratio (page 15).

**Trousdale Turner Correctional Center management's continued noncompliance with contract requirements and department policies challenges the department's ability to effectively monitor the private prison**
After nearly two years in operation, Trousdale Turner Correctional Center still did not comply with some of the Department of Correction's policies and contract requirements. While the department's contract monitoring efforts regularly report the facility's shortcomings, cuts in monitoring staff may have reduced the department's ability to effectively monitor key contract

(The 2017 Report, pg. iv).

25.     Staffing shortages were identified as having the possibility of preventing transportation to and from medical. (Id. at pp. 9-10). TTCF also impeded prisoner's access to medical, specifically sick call appointments, by not having posted instructions for obtaining medical care. (Id. at p. 22). Additionally, thirteen (13) percent of inmates medical files reviewed did not include documentation of a health screening conducted upon arrival at the facility. (Id. at p. 23). Finally, twenty-nine (29) percent of inmate medical files reviewed did not include documentation that showed inmates had been instructed on how to obtain medical care. (Id.).

26.     Plaintiff avers that the Deceased's TTCF complete medical intake screening records are missing in this matter, or they have been destroyed.

27.     The January 2020 Comptroller Report (hereinafter "The 2020 Report") covered

activities for the period October 1, 2017, through July 31, 2019.[4] On information and belief, TTCF continued to inadequately staff, which had an adverse impact on safety and security of inmates:

## Correctional Staffing and Department Turnover

**Management must continue efforts to ensure adequate staffing at state and CoreCivic correctional facilities in order to provide safe and secure facilities for inmates and staff.** Sufficient staffing of correctional officer positions is vital to achieving the mission of the Department of Correction; however, both state- and CoreCivic-managed facilities have experienced significant difficulties in hiring and retaining a sufficient number of correctional officers. Due to minimal staffing levels at both state and CoreCivic entities, management has increased overtime and temporarily closed noncritical posts to cover critical posts and duties. At the facilities we visited, we found that, on average, they operated with fewer than the approved number of correctional officers while noncritical posts, such as transportation and recreation, were consistently under-staffed or closed. Low staffing levels coupled with frequent overtime impacts management's ability to provide safe and secure facilities, especially in emergencies. See **Observation 6** on page 130 and **Observation 7** on page 133.

**The department should continue its efforts to remedy the deficiencies on CoreCivic's staffing reports as noted in the prior audit.** Despite management's stated corrective action after the November 2017 performance audit and efforts to accurately track staffing positions on a monthly basis, CoreCivic facilities' monthly staffing reports contained the same errors noted in the prior audit, so department management cannot effectively track whether CoreCivic is meeting its contractually required staffing levels. See **Finding 14** on page 135.

(The 2020 Report, pg. viii).

   28.    The 2020 Report identified continued low staffing levels coupled with frequent overtime as limiting CoreCivic's ability to provide safe and secure facilities, especially in emergencies, including medical emergencies. (*Id.*)

   29.    CoreCivic's Tennessee facilities routinely ignore basic inmate civil rights. For example, at Trousdale Turner Correctional Facility CoreCivic implemented a ban on the Quaran and free religious exercise, engages in understaffing, and has presided over a pattern of inmate-on-inmate attacks resulting in an egregious number of deaths over the last several years.

---

[4] https://www.capitol.tn.gov/Archives/Joint/committees/gov-opps/jud/Department%20of%20Correction%20Audit%20Report%20January%202020.pdf

30.     Outside of Tennessee CoreCivic's actions are no better. According to a 2011 lawsuit filed by the American Civil Liberties Union, for example, understaffing by CoreCivic at their Idaho Facility led to such a violent atmosphere that CoreCivic settled the lawsuit and agreed to provide minimum staff levels. CoreCivic was subsequently held in contempt of court in 2013 for violating the agreement and falsifying records to misrepresent the number of guards on duty.  In 2014, the FBI opened an investigation of the company based on its billing for "ghost employees."  The Governor of Idaho, Butch Otter, ordered state officials to take control of the prison, and the company had to pay the state $1 million for understaffing.

31.     On, or about, February 23, 2017, a federal jury found that CoreCivic had violated inmates' Eighth Amendment rights to be free from cruel and unusual punishment by being deliberately indifferent to the serious risk posed by the company's long-standing practice of understaffing the Idaho Correction Center.

32.     At the Oklahoma prison operated by CoreCivic, ten prisoners were involved in a fight on February 25, 2015, that left five with stab wounds. The following month, eight more were involved in another stabbing incident. In June of that year, thirty-three gang members fought with weapons and eleven prisoners were sent to a hospital. On September 12, 2015, four inmates were killed during a riot at the same facility. Inmates alleged that gangs were effectively allowed to run the prisons. According to an investigation by the Oklahoma Department of Corrections, video evidence of the September 12, 2015, incident from three cameras at the facility were recorded over or deleted by CoreCivic employees. Two guards were later indicted for brining drugs and other contraband into the prison, including one of the guards accused of failing to act during the riot. Between 2012 and 2016, one-third of all homicides in Oklahoma prisons occurred at two CoreCivic facilities, though they held just over 10 percent of the state's

prison population.

33.    In August of 2016, the Office of the Inspector General ("OIG") of the U.S. Department of Justice found widespread deficiencies in staffing and medical care at facilities operated for the Federal Bureau of Prisons by private contractors, including those operated by CoreCivic.[5] As a result, the Department of Justice indicated that it would phase out its relationships with private prisons.  That, in turn, led to the shareholder lawsuit described above. In a separate report released on April 25, 2017, OIG found understaffing at a detention facility in Leavenworth, Kansas operated by CoreCivic for the U.S. Marshall Service, with vacancy levels reaching as high as 23 percent between 2014 and 2015. Earlier the company tried to hide the fact that it was packing three inmates into two-inmate cells at Leavenworth, contrary to prison regulations.  The following excerpt appears in the April 25, 2017 OIG report:

> In 2011, without the knowledge of the [U.S. Marshals Service], the [Leavenworth Detention Center or "LDC"] took steps to conceal its practice of triple bunking detainees.  LDC staff uninstalled the third beds bolted to the floor of several cells designed for two detainees and removed the beds from the facility in advance of a 2011 America Correctional Association (ACA) accreditation audit. A subsequent CoreCivic internal investigation revealed that this may have also occurred during other ACA audits of the LDC..

34.    In May of 2012, a riot at a federal prison operated by CoreCivic in Natchez, Mississippi resulted in the death of a guard and injuries to approximately 20 inmates and prison staff.  OIG investigated and alleged the following in a report released in December of 2016:

> The riot, according to a Federal Bureau of Investigation (FBI) affidavit, was a consequence of what inmates perceived to be inadequate medical care, substandard food, and disrespectful staff members.  A BOP after-action report found deficiencies in staffing levels, staff experience, communication between staff and inmates, and CoreCivic's intelligence system.  The report specifically cited the lack of Spanish-speaking staff and staff inexperience.

---

[5] A summary of the report and findings was captured in a video published by the Department of Justice. Multimedia (justice.gov), p. 14, video dated Aug. 11, 2016.

For years after the riot, we were deeply concerned to find that the facility was plagued by the same significant deficiencies in correction and health services and Spanish-speaking staffing. In 19 of the 38 months following the riot, we found CoreCivic staffed correctional services at an even lower levels than at the time of the riot in terms of actual post coverage. Yet CoreCivic's monthly reports to the BOP, which were based on simple headcounts, showed that correctional staffing levels had improved in 36 of those 38 months.

Plaintiff restates the foregoing allegations as her own.

35.    On December 12, 2017, a former guard at Trousdale Turner testified before a legislative committee that she resigned from the company in September after witnessing two inmates die from medical neglect during the seven months that she worked for the company. Ashley Dixon told lawmakers that in one instance she pleaded with her superiors for three days to help a dying inmate, but to no avail, and her subsequent complaints were ignored by company officials.

36.    The foregoing incidents are some, but not even remotely all, of the incidents that demonstrate that CoreCivic, its wardens, and its employees adopt and enforce a corporate policy or well-established custom of understaffing, all for the purpose of increasing profits, and notwithstanding that such practices led to assaults, deaths, murders, and mayhem. The death of the Deceased was a predictable consequence of this corporate policy promoted by CoreCivic

37.    Defendant CoreCivic, its employees, and agents, knew that understaffing was rampant at TTCF, and did not make reasonable efforts to counteract the threats to inmate safety created by understaffing.

38.    CoreCivic has adopted a policy of withholding medical care from inmates in order to maximize profits. That policy, enforced through Warden Frink, contributed to the Deceased's death.

39.    Defendant CMA was responsible for providing medical and dental healthcare services at CoreCivic facilities, including TTCF. Notwithstanding the longstanding failures in

14

medical care at TTCF, CMA continued the practice of withholding medical care in order to maximize profits.

40.     At all relevant times to this action, Warden Frink failed to promulgate institutional policies and procedures that conformed to TDOC's policies, and he failed to supervise and evaluate the medical care provided to the prisoner's under his watch, including the Deceased. Warden Frink's failures directly resulted in the Deceased's death.

**VI.**
**CAUSES OF ACTION**

**COUNT 1 – VIOLATION OF 42 U.S.C. § 1983**
**(AGAINST DEFENDANTS CORECIVIC & TROUSDALE COUNTY)**

41.     Plaintiff incorporates paragraphs 1 through 40 as if fully set forth in this Count.

42.     As alleged above CoreCivic, acting under color of state law and with deliberate indifference, violated the rights of the Deceased secured by the Eighth and Fourteenth Amendments of the U.S. Constitution.

43.     At all times relevant to this Complaint, Defendant CoreCivic acted under color of law, performed government functions, was entwined in a symbiotic relationship with the Tennessee Department of Corrections and was otherwise engaged in state action consistent with the Supreme Court's analysis in *Brentwood Acad. V. Tenn. Secondary Sch. Ath. Ass'n,* 531 U.S. 288 (2000). CoreCivic is a "person" within the meaning of 42 U.S.C. § 1983.

44.     Defendant CoreCivic acted with deliberate indifference, directly participated in and proximately caused the above described constitutional rights violations by establishing policies or well-established customs that directly and proximately caused the deprivation of Plaintiff's constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution including, but not limited to, the deliberate and systematic understaffing of

15

TTCF, the deliberate and/or reckless failure to promulgate or implement the measures directed by the Tennessee Department of Corrections, and the deliberate and systematic failure to implement policies and procedures designed to curtail known problems with providing prisoners medical care at TCCF and CoreCivic's other facilities.

45.     Cumulatively or in the alternative, CoreCivic implements facially unconstitutional policies, *de facto* policies, or customs that directly and proximately resulted in Decedent's death.

46.     In the alternative, CoreCivic acted with deliberate indifference, failed to properly train and/or supervise its subordinates with respect to their responsibilities in ensuring that they provide a safe environment and quickly and appropriately provided necessary medical treatment to prisoners for serious medical conditions.

47.     Furthermore, CoreCivic was fully subcontracted by Trousdale County to run TTCF with full policy making authority. Therefore, Trousdale County is liable for the policies, practices, and customs of CoreCivic at TTCF.

### COUNT 2 – VIOLATION OF 42 U.S.C. § 1983
### (AGAINST DEFENDANT FRINK HIS INDIVIDUAL CAPACITIES)

48.     Plaintiff incorporates paragraphs 1 through 40 as if fully set forth in this Count.

49.     As alleged above Warden Frink acting under color of state law, violated the rights of the Deceased secured by the Eighth and Fourteenth Amendments of the U.S. Constitution.

50.     Defendant Frink was, at all times material to this cause, the warden of TTCF. Defendant Frink either established policies or well-established customs or knowingly acquiesced in the establishment of policies or well-established customs that were the direct and proximate cause of Decedent's deprivation of his constitutional rights. As a result, Defendant Frink is personally liable under Section 1983. *Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 81 (6th Cir. 1995)("At a minimum, a § 1983 plaintiff must show that a supervisory official at least

implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate") quoting, *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1983)..

## COUNT 3 – VIOLATION OF 42 U.S.C. § 1983
## (AGAINST CMA)

51.     Plaintiff re-alleges paragraphs 1-40 of this Complaint as if set forth verbatim herein.

52.     At all times relevant to this Complaint, CMA acted under color of law, performed government functions, was entwined in a symbiotic relationship with TDOC, and were otherwise engaged in state action consistent with the Supreme Court's analysis in *Brentwood Acad. V. Tenn. Secondary Sch. Ath. Ass'n,* 531 U.S. 288 (2000). CMA is a "person" within the meaning of 42 U.S.C. § 1983.

53.     CMA directly participated in and proximately caused the above-described constitutional rights violations by instituting policies and customs with deliberate indifference to the serious medical needs of individuals like the Deceased, specifically including, but not limited to, CMA's policies of refusing to examine prisoners.

54.     To the extent that CMA claims their subordinates are the actual persons who were deliberately indifferent to the serious medical needs of the Deceased and that they were not personally involved themselves, CMA at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of these offending subordinates. As a result, CMA is personally liable under Section 1983. *Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 81 (6th Cir. 1995) ("At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate") quoting, *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1983).

17

55.     CMA, acting by and through its policymakers, officers, and agents with deliberate indifference, implemented customs and policies and/or at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the individuals who violated the above-described constitutional rights of the Deceased. These policies and customs directly and proximately caused the above-described constitutional rights violations resulting in the Deceased's death.

56.     In the alternative, if CMA claims that the conduct described herein is contrary to its policies, then CMA, acting by and through its policymakers, officers, and agents and with deliberate indifference, failed to properly train or supervise its agents and employees with respect to their responsibilities in ensuring that they provide reasonable medical care, which proximately caused the above-described constitutional rights violations.

### COUNT 4 – VIOLATION OF 42 U.S.C. § 1983
### (AGAINST NURSE ROBERSON AND DR. OWEN)

57.     Plaintiff re-alleges paragraphs 1-40 of this Complaint as if set forth verbatim herein.

58.     Nurse Roberson and Dr. Owen, acting with deliberate indifference, directly participated in and proximately caused the above-described constitutional rights violations by deliberately ignoring the Deceased's serious medical needs.

59.     Nurse Roberson and Dr. Owen were responsible for providing and/or supervising the medical treatment of the Deceased and deliberately failed to provide or supervise the treatment of the Deceased.

60.     A layperson would be aware that serious dental injuries, sepsis, chest pains, and strokes are serious medical conditions that if untreated for extended periods of time require immediate emergent care. Nurse Roberson and Dr. Owen knew or should have known (1) that

18

because the Deceased had a history of serious dental injuries, he suffered from a serious medical need, and (2) immediate emergent care was necessary given the Deceased's medical symptoms.

61.     A layperson would be aware that shortness of breath and chest pains are indicative of a serious medical conditions that requires immediate emergent care and that if left untreated could likely to result in death. Nurse Roberson and Dr. Owen knew or should have known (1) that because the Deceased had chest pains and shortness of breath, he likely suffered from a serious medical need, and (2) immediate emergent care was necessary given the Deceased's medical symptoms.

62.     Nurse Roberson and Dr. Owen knew or had reason to know that the Deceased had a serious medical need that required immediate emergent treatment and that there was a risk that the Deceased would die if he did not receive immediate emergent treatment. Nurse Roberson and Dr. Owen were informed of that risk by the Deceased. Nurse Roberson and Dr. Owen inexcusably disregarded that risk by failing to immediately transport the Deceased to Vanderbilt Medical Center to ensure that Deceased received necessary lifesaving emergent care.

63.     Nurse Roberson and Dr. Owen were subjectively aware of a serious risk to the Deceased and disregarded that risk by failing to take reasonable steps to abate it. Nurse Roberson and Dr. Owen, acting recklessly and with deliberate indifference, chose to ignore the Deceased's serious medical needs and did not immediate transport him for necessary lifesaving emergent care that they were aware he required. The failure of Nurse Roberson and Dr. Owen to properly examine or transport the Deceased to Vanderbilt Medical Center in a timely manner was so woefully inadequate as to amount to no treatment at all.

64.     Nurse Roberson and Dr. Owen's failures to provide necessary medical care resulted in the Deceased's excruciatingly painful and slow death.

## COUNT 5 – HEALTH CARE LIABILITY
## (AGAINST CMA, NURSE ROBERSON, AND DR. OWEN)

65.     Plaintiff re-alleges paragraphs 1-40 of this Complaint as if set forth verbatim herein.

66.     This Court has jurisdiction over the subject matter of this action as it arises under the Tennessee Healthcare Liability Act and the Common Law of the State of Tennessee.

67.     All acts complained of herein occurred in Trousdale County, Tennessee. All acts occurred within one year of the date of filing and/or discovery.

68.     For purposes of liability pursuant to the Tennessee Healthcare Liability Act, Tenn. Code Ann. § 29-26-101 *et seq.* CMA is vicariously liable for the acts of its agents and employees, including, but not limited to, Nurse Roberson and Dr. Owen.[6]

69.     "Corporations may be subject to liability under the Tennessee Medical Malpractice Act. Tenn. Code Ann. § 29-26-101(a)(2)(E)." *Hargrow v. Shelby Cty.*, No. 13-2770, 2014 U.S. Dist. LEXIS 108917, at *18 (W.D. Tenn. Aug. 7, 2014).

70.     At all times relevant to this Complaint, CMA, Nurse Roberson, and Dr. Owen owed the Deceased a duty of care to provide medical care that met the standard of care in Trousdale County, Tennessee and to arrange for him to be evaluated by medical staff (on-site or off-site, as appropriate) when necessary. Ultimately, CMA was responsible for the continuity of care received or not received by the Deceased.

71.     CMA, through its agents including Nurse Roberson and Dr. Owen, owed a duty to its patients, including the Deceased, to provide care, treatment and services as reasonably prudent healthcare providers under same or similar circumstances, including proper evaluation,

---

[6] Plaintiff brings suit against only CMA for healthcare liability. Nurse Roberson and Dr. Owen are named only as defendants pursuant to 42 U.S.C. § 1983.

diagnosis and care of patients like the Deceased. Further CMA had a duty to provide treatment within the applicable standard of care of this or a similar community and take all reasonable steps to ensure that its staff where it was treating patients delivered care and services to patients in accordance with CMA's orders, care plan interventions, and policies.

72.     CMA's agents breached the duty of care in ways that include but are not limited to the following:

> 1.      failed to properly evaluate, diagnose, treat and monitor the Deceased's conditions;
>
> 2.      failed to implement and provide an appropriate treatment plan; and
>
> 3.      unreasonably delayed the Deceased's transport to a fully-equipped emergency medical facility.

72.     CMA breached its duty owed to the Deceased and failed to provide treatment within the applicable standard of care of this or a similar community by not providing proper evaluation, diagnosis and treatment and further failing to take all reasonable steps to ensure the staff and nurses delivered care and services to patients in accordance with CMA's orders, care plan interventions, and policies, and these breaches were the direct and proximate cause of the damages, and injuries suffered by the Deceased described herein.

73.     CMA owed a duty to patients, including the Deceased, to hire, train and supervise its nurses and staff to ensure said nurses and staff delivered care and services to patients in accordance with physician orders, care plan interventions, and its policies with appropriate timing and technique in the performance of orders. CMA further owed a duty to patients, including the Deceased, to appropriately credential, evaluate, employ and supervise its nurses and staff.

74.     CMA breached its duty to the Deceased by failing to hire, train and supervise its

nurses and staff to ensure said nurses and staff delivered care and services to patients in accordance with physician orders, care plan interventions, and its policies with appropriate timing and technique in the performance of orders. CMA further recklessly failed to provide the Deceased nurses and staff appropriately credentialed, evaluated, employed and supervised. CMA was aware of the defects in the credentialing and qualifications of its nurses and staff and was aware that such defects posed a substantial and unjustifiable risk to patients including the Deceased, but consciously disregarded such defects and risks. All of those breaches, acts and omissions were the direct and proximate cause of the damages and injuries suffered by the Deceased described herein.

75.     These deviations from the standard care resulted in liability for CMA under the Tennessee Healthcare Liability Act and are the direct and proximate cause of the Deceased's previously-described physical injuries, pain, suffering, emotional distress, and ultimately his death.

## COUNT 6 – NEGLIGENCE & NEGLIGENCE *PER SE* AGAINST DEFENDANTS FRINK, CORECIVIC, AND TROUSDALE COUNTY

73.     Plaintiff incorporates paragraphs 1 through 40 as if fully set forth in this Count.

74.     Under Tennessee law, there are five distinct elements that must be established in any negligence claim. The elements of negligence include (1) a duty of care owed by the defendant to the Decedent; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause.

75.     It is clearly established under Tennessee law that prison officials owe a duty of care to the inmates in their custody. *Downs ex rel. Downs v. Bush*, 263 S.W.3d 812, 820 (Tenn. 2008) (citing Restatement (Second) of Torts § 314A).

22

76. Tenn. Code Ann. § 41-1-104(b) establishes a statutory obligation for the maintenance of policies and procedures and places that obligation upon the prison's warden, in this case, Defendant Frink. "The custody, welfare, conduct, and safekeeping of the inmates shall be the responsibility of the warden, who will examine into the affairs of the institution daily to assure that proper standards are maintained." Tenn. Code Ann. §41-1-104(b).

77. TDOC Policy mandates the implementation of medical services to prisoners. Compliance with TDOC policy is the standard of care for management of a prison in Tennessee.

78. At all times material to this cause, CoreCivic was acting within the scope of his employment as an employee and agent of CoreCivic. Therefore, CoreCivic is responsible for Defendant Frink's negligent conduct as the warden of TTCF.

79. As described above, Defendants Frink, CoreCivic, and Trousdale County maintained a practice of understaffing that amounted to a policy or custom, failing to implement policies to ensure prisoner's timely were evaluated by medical staff, and to reasonably ensure inmate safety.

80. CoreCivic, both individually and through Defendant Frink's statutory and regulatory obligations, owed its inmates a duty of care to establish policies and procedures reasonably calculated to ensure their reasonable safety and health care were provided to prisoners.

81. CoreCivic actively established policies or well-established customs of understaffing and failing to provide for the safety and security of prisoners, including through the administration of medical services, nationally and at TTCF and failed to adequately implement TDOC policies.

82. The Deceased's and Plaintiff's injuries have already been identified in the

23

incorporated paragraphs, and Defendants Frink, CoreCivic, and Trousdale County's breaches of the statutory and regulatory obligations described in this count are the direct and proximate cause of those injuries.

<b>COUNT 7 – GROSS NEGLIGENCE AGAINST ALL DEFENDANTS</b>

83.     Plaintiff incorporates paragraphs 1 through 40 as if fully set forth in this Count.

84.     Three conditions individuals can use to establish the present of gross negligence are as follows: (1) such entire want of care as would raise a presumption of conscious indifference to consequences, or (2) a heedless and reckless disregard for another's rights, or (3) utter unconcern for the safety of others. *Gross v. Nashville Gas. Co.*, 608 S.W.2d 860 (Tenn. Ct. App. 1980).

85.     If the court finds there both deliberate indifference and negligence under Tennessee law, there must also be gross negligence.

<b>VII.<br>PRAYER FOR RELIEF</b>

WHEREFORE, the Plaintiff demands judgment against Defendants on each Count of the Complaint and pray for the following relief:

1.      Issue service of process and serve the Defendants;

2.      Permit Plaintiff leave to amend this Complaint after reasonable discovery;

3.      Empanel a jury to try this matter;

4.      Award Plaintiff compensatory damages in an amount of not less than $3,000,000;

5.      Award Plaintiff punitive damages against all Defendants except Trousdale County;

6.      Award Plaintiff her reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

24

7.    Award costs and expenses incurred in this action pursuant to Rule 54 of the
      Federal Rules of Civil Procedure;

8.    Award pre-and post-judgment interest pursuant to TENN. CODE ANN. § 47-14-123
      in amount according to the proof at trial; and

9.    Grant Plaintiff such further relief as the Court may deem just and proper.


                              Respectfully submitted,



                              */s/Brice M. Timmons*
                              Brice M. Timmons (#29582)
                              Craig Edgington (#38205)
                              Melissa J. Stewart (#40638)
                              DONATI LAW, PLLC
                              1545 Union Avenue
                              Memphis, TN 38104
                              (901) 278-1004 (Phone)
                              (901) 278-3111 (Fax)
                              brice@donatilaw.com
                              craig@donatilaw.com
                              melissa@donatilaw.com

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
PAMELA LOWRANCE, individually and as Wrongful Death Representative of Danny Lowrance, Deceased.

**DEFENDANTS**
CORECIVIC d/b/a "TROUSDALE TURNER CORRECTIONAL FACILITY", et al.

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Brice M. Timmons, Donati Law, PLLC; 1545 Union Ave., Memphis, TN 38104; 901-278-1004

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 840 Trademark | [ ] 460 Deportation |
| | | [ ] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [x] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Civil Rights Act of 1871, 42 USC Sections 1983 & 1988

Brief description of cause:
unlawful treatment of decedent with Defendants acting with deliberate indifference when they deprived decedent of basic, necessary medical care

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE 11/01/2023

SIGNATURE OF ATTORNEY OF RECORD /s/Brice M. Timmons

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

Case 3:23-mc-09999   Document 910   Filed 11/01/23   Page 26 of 27 PageID #: 39785

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b) County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c) Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II. Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III. Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV. Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V. Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI. Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII. Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII. Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.